UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANTHONY GIANONNE, | |
| Plaintiff, | No. 16 C 9455 |
| v. | Judge Thomas M. Durkin |
| CITY OF NAPERVILLE; DETECTIVE GONZALEZ; SARGENT BISSEGGER; DETECTIVE CIMILLUCA; DETECTIVE UMBENHOWER; DETECTIVE KOWAL; DETECTIVE SPENCER; DETECTIVE SHIPANIK; JOHN DOE OFFICERS ## 1-3, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Anthony Gianonne initiated this case by filing a complaint on October 3, 2016. R. 1. In that complaint, Gianonne alleged that on December 2, 2013, Defendants stopped him while he was driving his car, searched the car, and arrested him, all in violation of the Fourth Amendment. *Id.* ¶ 19.

Naperville filed a motion to dismiss arguing that that Gianonne's claim was untimely. *See* R. 5. Since there is a two-year statute of limitations for constitutional torts in Illinois, Gianonne had to have filed any claim based on the December 2, 2013 traffic stop and arrest by December 2, 2015. *See Savoy v. Lyons*, 469 F.3d 667, 672 (7th Cir. 2006); *see also Stapinski v. Masterson*, 2017 WL 497772 (N.D. Ill. Feb. 7, 2017). At the hearing on Naperville's motion on December 12, 2016, Gianonne's

counsel acknowledged that Gianonne's claims were time-barred, and sought leave to file an amended complaint, which the Court granted. *See* R. 8.

Gianonne filed an amended complaint on January 20, 2017. R. 9. The amended complaint continues to make a claim against the individual officers and Naperville based on the traffic stop and arrest that occurred on December 2, 2013, but does so under a state law theory of malicious prosecution (Count I). *Id.* The amended complaint also continues to make a claim against Naperville based on the traffic stop and arrest pursuant to Section 1983 (Count III). *Id.* It also adds the following allegations:

> After Plaintiff's arrest and detention, on information and belief, the Naperville Police Department placed illegal tracking devices on Plaintiff's vehicle.
>
> On information and belief, unidentified Officers placed these tracking devices and did so without a warrant or legal justification.
>
> On belief these tracking devices remained on Plaintiff's vehicles until on or about May 2015 as the police conducted an investigation of illegal organized crime activities.
>
> \*   \*   \*   \*
>
> In Case 1:15-cv-05052, filed in this very court the Naperville Police Department was sued for allegedly illegally searching and seizure of a home. In this complaint, Stephen Tracy has alleged similarly that the officer had no warrant, no consent to search and the occupant of the home had committed no crime.
>
> In Case #15-cv-04608, currently pending in the Northern District of Illinois, the Naperville Police ha[ve] been accused of illegal search and seizure in an eerily similar action. In that case, the Plaintiff was parked in [a]

> McDonald's parking lot, was blocked in by the Naperville Police and accused of DWI. Just as the matter before this court, the Defendant was exonerated when a state court judge ruled that the Naperville Police Department violated his constitutional rights by engaging in illegal searches and seizures.

R. 9 ¶¶ 54-56, 81-82. On the basis of the alleged placement of a tracking device on Gianonne's car, he makes claims against the individual officers for violation of the Fourth Amendment (Count II), and against Naperville (Count III).

Naperville has moved to dismiss Count III. R. 10. As discussed, any claim made pursuant to Section 1983 based on the traffic stop and arrest in 2013—including his current *Monell* claim against Naperville—is time barred. Gianonne does not argue otherwise. Thus, to the extent Count III attempts to allege a Fourth Amendment violation against Naperville based on the traffic stop and arrest that occurred on December 2, 2013, Naperville's motion to dismiss that claim is granted.

Gianonne's only remaining allegations concern the use by Naperville officers of a tracking device on his car. Although Gianonne argues that he "plainly alleges that [Naperville's] policy or custom of failing to supervise [and] train resulted in the constitutional violations," R. 17 at 8, neither his allegations nor his arguments cite Naperville's alleged use of the tracking device as support for *Monell* liability against Naperville. Rather, Gianonne only references the traffic stop as the basis for his *Monell* claims. Thus, despite Gianonne's additional allegations regarding the tracking device, he has not made a *Monell* claim based on those allegations. Nevertheless, it is likely that given a opportunity to amend his complaint, Gianonne would make such a claim. So the Court will address them prospectively.

"A local governing body may be liable for monetary damages under § 1983 if the unconstitutional act complained of is caused by: (1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010) (citing *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 690 (1978)). To claim *Monell* liability, a plaintiff must allege "that the [entity] policymakers were deliberately indifferent as to [the] known or obvious consequences." *Thomas*, 604 F.3d at 303. "In other words, they must have been aware of the risk they created by the custom or practice and must have failed to take appropriate steps to protect the plaintiff." *Id.*

The Seventh Circuit has made clear that, absent an express policy, *Monell* liability is only appropriate where the "plaintiff [can] introduce evidence demonstrating that the unlawful practice was so pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision." *Phelan v. Cook Cnty.*, 463 F.3d 773, 790 (7th Cir. 2006) (the evidence must be such that the plaintiff can "weave . . . separate incidents together into a cognizable policy"). For an entity to be liable in this manner, the causal relationship between the policy or practice and the harm must be such that the policy was the "moving force behind the constitutional violation." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989); *accord Teesdale v. City of Chicago*, 690 F.3d 829, 833 (7th Cir. 2012). To successfully plead a *Monell* claim on a "custom theory, the plaintiff must demonstrate that the

practice is widespread and that the specific violations complained of were not isolated incidents." *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017). While "evidence of a single violation of federal rights can trigger municipal liability if the violation was a highly predictable consequence of the municipality's failure to act," *Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917 (7th Cir. 2004), generally a plaintiff must "provide examples of [the defendants] taking actions similar to those complained of," or "plausibly allege that such examples exist." *Gill*, 850 F.3d at 344; *see also Thomas*, 604 F.3d at 303 ("[T]here is no clear consensus as to how frequently [certain] conduct must occur to impose *Monell* liability [under the custom and practice theory], except that it must be more than one instance, or even three.") (internal citations omitted). In most circumstances, the "specific actions of the [defendants] in [the plaintiff's] case alone, without more cannot sustain a *Monell* claim based on the theory of a de facto policy." *Id.*

### A. Failure to Train

To the extent Gianonne claims that Naperville is liable for placing the tracking device on his car because it failed to adequately train its police officers in compliance with the Fourth Amendment, that claim is dismissed. In *Connick v. Thompson*, 563 U.S. 51 (2011), the Supreme Court explained that municipal liability based on an alleged failure to train must be supported by a pattern of highly similar prior constitutional violations:

> [Plaintiff] points out that, during the ten years preceding his armed robbery trial, Louisiana courts had overturned four convictions because of Brady violations by prosecutors in Connick's office. Those four reversals could

5

> not have put Connick on notice that the office's *Brady* training was inadequate with respect to the sort of *Brady* violation at issue here. None of those cases involved failure to disclose blood evidence, a crime lab report, or physical or scientific evidence of any kind. Because those incidents are not similar to the violation at issue here, they could not have put Connick on notice that specific training was necessary to avoid this constitutional violation.

*Id.* at 62-63. This Court recently recognized the high standard for alleging *Monell* liability based on failure to train. *See Karney v. City of Naperville*, 2016 WL 6082354, at *13 (N.D. Ill. Oct. 18, 2016). In *Karney*, the Court held that "such a *Monell* claim would require a larger number of similar constitutional violations before deliberate indifference based on a failure to train could be inferred." *Id.* Here, Gianonne has only his own allegations regarding the traffic stop and the tracking device; the *Karney* case itself (in which Naperville was also the defendant); and another federal case brought against a Naperville police officer. Naperville has a population of more than 146,000, and is surrounded by other densely populated suburbs. It is likely that Naperville police are faced with circumstances implicating the Fourth Amendment on a daily basis. Three or four instances of illegal decisions by its officers out of what are likely hundreds, or even thousands, of Fourth Amendment searches and seizures conducted by Naperville police on an annual basis, is insufficient to place Naperville on notice that additional training is necessary. This is particularly true for Gianonne's present claims since none of the examples he provides to support his failure to train claim involved the illegal

6

placement of a tracking device. Thus, Gianonne has failed to state a claim for failure to train.

B.   **Custom of Condoning Illegal Searches**

Moreover, allegations sufficient to plausibly establish a custom of condoning illegal searches that were present in *Karney* are not present here. In *Karney*, the Court held that the plaintiff had stated such a claim on the basis of his own traffic stop experience with Naperville police; an unrelated state case alleging that Naperville officers had made a traffic stop in violation of the Fourth Amendment; and a second unrelated federal case alleging that a Naperville officer had illegally searched a house. *See* 2016 WL 60822354, at *10-13. Gianonne contends that his traffic stop and Naperville's use of a tracking device on his car are yet further examples of Naperville's custom of conducing searches that violate the Fourth Amendment. He argues that the Court should apply the same reasoning in applied in *Karney* to deny Naperville's motion to dismiss.

The Court disagrees, however, that the use of a tracking device is sufficiently similar to the two traffic stop searches and the search of the home the Court held were sufficiently similar in *Karney*. The traffic stops both involved police officers on patrol making decisions in the heat of the moment when they happened upon the plaintiffs by chance. Similarly, the home search involved a police officer summoned by a landlord for assistance in inspecting a tenant's residence for purposes of the landlord's application to refinance the mortgage on the building. *See* Defendants' Local Rule 56.1 Statement, *Tracy v. Hull*, 15 CV 5052, R. 64 ¶ 30 (N.D. Ill. Aug. 15,

7

2016). All of these circumstances involved plaintiffs who had raised the suspicions of the officers involved in some form or another, or resisted what the officers believed to be a lawful instruction. In other words, the officers were immediately reacting to the plaintiffs' conduct and making a quick determination that a search was necessary and appropriate. It is plausible to think that a police department might consciously accommodate the snap decisions officers must make in the field by developing a custom of regularly condoning illegal decisions under such circumstances.

By contrast, the decision to place a tracking device on a car is a premeditated attempt to investigate a potential suspect. There is nothing immediate about such a decision. Rather, there is time to consider whether the evidence supports a finding of probable cause and to secure a warrant. A decision to use a tracking device without a warrant constitutes a complete disregard of an individual's rights under the Fourth Amendment and the legal processes instituted to ensure that those rights are not violated. Unlike a custom that is born of a desire to accommodate the difficult judgment calls police officers make every day, a custom of permitting illegal use of tracking devices implies that Naperville has a degree of contempt for the Fourth Amendment not present in the other cases Gianonne cites. Since Gianonne has not presented any examples of conduct by Naperville officers akin to planting a

tracking device on a car besides his own, his claim that Naperville has a custom of tolerating illegal searches by its police officers is dismissed.[1]

## Conclusion

For the foregoing reasons, Naperville's motion to dismiss Count III, R. 10, is granted to the extent that Gianonne's claims against Naperville are dismissed without prejudice. The motion is denied to the extent it seeks to strike portions of Gianonne's prayer for relief, without prejudice to raising these arguments later in the proceedings.

Gianonne may file a second amended complaint if he believes he can, in accordance with Federal Rule of Civil Procedure 11, cure the deficiencies described by this opinion and order with respect to Count III. Any such motion should attach the proposed second amended complaint as an exhibit and be supported by a brief of no more than five pages that explains how the second amended complaint cures the deficiencies of the first amended complaint. Defendants should not respond to any such motion unless the Court so orders. Any such motion must be filed by July 13, 2017, or the dismissal of Gianonne's claim against Naperville will be with prejudice.

---

[1] Naperville also makes three arguments seeking to strike aspects of Gianonne's prayer for relief: (1) his claim for punitive damages against Naperville is improper; (2) his "prayer for attorneys' fees is overly broad because it can be construed as seeking attorneys' fees from the municipality in the event that the Plaintiff prevails against an individual defendant"; and (3) he has no basis to seek injunctive relief. R. 10-1 at 10-11. As the proper form of relief is not yet at issue in this case, these issues are not ripe. The Court will decide these issues if necessary when the time comes.

ENTERED:

_Thomas M Durkin_
_____
Honorable Thomas M. Durkin
United States District Judge

Dated: June 13, 2017